OPINION OF THE COURT
Peter N. Wells, S.
This is a petition for letters of administration by the alleged *85 half niece of decedent, Roberta W. Seaman, who died intestate on March 14, 1989, leaving an estate of approximately $1 million. The verified petition and an accompanying attorney’s affidavit reveal the following facts: decedent’s father was Lloyd I. Seaman. Lloyd I. Seaman married Gladys Dudley and they had one son Lloyd Dudley Seaman (decedent’s half brother). Lloyd I. Seaman and Gladys Dudley divorced. Gladys Dudley subsequently married Clarence Lindner who thereafter adopted Lloyd Dudley Seaman, and his name became Lloyd Dudley Lindner. Petitioner is the daughter of Lloyd Dudley Lindner.
In the meantime, Lloyd I. Seaman married Mary Ward and they had one daughter, decedent, Roberta W. Seaman. Thus, the son of Lloyd I. Seaman, Lloyd Dudley Lindner, was the adopted-out half brother of the decedent. In short, petitioner is the child of the adopted-out half brother of the decedent.
Lloyd Dudley Lindner, decedent’s adopted-out half brother, apparently also known as Dudley Lindner, died on March 15, 1984. Lloyd I. Seaman died on August 2, 1956. As far as this court can determine from the record, decedent’s remaining relatives are three cousins.
This set of facts presents a novel issue to the court. Does the daughter (petitioner) of decedent’s adopted-out half brother qualify as a distributee under SCPA 1001 for appointment as administratrix of decedent’s estate?
Pursuant to EPTL 4-1.1 (a) (7) the distribution of property of a person who dies intestate is as follows, if the person is survived by "[brothers of sisters or their issue, and no spouse, issue or parent, the whole to the brothers or sisters or to their issue per stripes.” EPTL 4-1.1 (d) provides that half-blood relatives are to be treated as if they were relatives of the whole blood. However, EPTL 4-1.1 (f) provides that "[t]he right of an adopted child to take a distributive share and the right of succession to the estate of an adopted child continue as provided in the domestic relations law.” Thus, for petitioner to qualify as a distributee entitled to letters of administration, a review of the Domestic Relations Law is in order.
Domestic Relations Law § 117 (1) provides in part:
"(b) The rights of an adoptive child to inheritance and succession from and through his natural parents shall terminate upon the making of the order of adoption except as hereinafter provided. * * *
"(e) Notwithstanding the provisions of paragraphs (a), (b) *86 and (d) of this subdivision, as to estates of persons dying after the thirty-first day of August, nineteen hundred eighty-seven, if:
"(1) the decedent is the adoptive child’s natural grandparent or is a descendant of such grandparent, and
"(2) an adoptive parent (i) is married to the child’s natural parent, (ii) is the child’s natural grandparent, or (iii) is descended from such grandparent, the rights of an adoptive child to inheritance and succession from and through either natural parent shall not terminate upon the making of the order of adoption. * * *
"(f) The right of inheritance of an adoptive child extends to the distributees of such child and such distributees shall be the same as if he were the natural child of the adoptive parent.”
At first glance, the instant petitioner might seem to fall within the confines of Domestic Relations Law § 117 (1). The decedent is the descendant of the adoptive child’s (Lloyd Dudley Lindner, decedent’s adopted-out half brother) natural grandparents (Lloyd I. Seaman’s parents). An adoptive parent did marry the child’s natural parent (Clarence Lindner, adoptive father, married Gladys Dudley Seaman, natural mother). Thus, the rights of the adopted child (Lloyd Dudley Lindner) to inheritance from either natural parent did not terminate upon his adoption.
However, we are concerned here with the inheritance rights of the next generation, i.e., the children of adopted-out children such as the petitioner. Domestic Relations Law § 117 (1) (f) specifically provides that "[t]he right of inheritance of an adoptive child extends to the distributees of such child and such distributees shall be the same as if he were the natural child of the adoptive parent.” (Emphasis added.) Thus, the statute specifically allows the distributees of an adopted-out child to inherit solely through the adoptive parent, and not through the natural parent that has been so replaced.
Given the above, the court finds that the only logical interpretation of Domestic Relations Law § 117 (1) is that the statute as written cannot be read to allow the issue of an adopted-out child to inherit from the natural parents (or their descendants or ancestors) of the adopted-out child. Any other interpretation would extend the statute to relationships not included by the Legislature.
In its memorandum to the Legislature, the Law Revision *87 Commission specifically referred only to the inheritance rights of the adopted-out child. It is apparent that the Commission did not intend to include the children of adopted-out children as being members of the class allowed to inherit from the adopted-out child’s natural family. This is confirmed not only by the Commission’s lack of mention of the descendants of adopted-out children, but also by its specific inclusion of the right of the adopted-out child to inherit from the descendants of natural grandparents. (Mem of Law Rev Commn, Legis Doc No. 65 [E], reported in 1987 McKinney’s Session Laws of NY, at 1926.)
Moreover, the Legislature, at the time of revising Domestic Relations Law § 117 (1) (e), did not revise or in any way change Domestic Relations Law § 117 (1) (f). It necessarily follows that by not changing paragraph (f), the Legislature did not intend to extend the inheritance rights of the distributees of adopted-out children to include inheritance through the natural parent that has been so replaced.
The main thrust of the legislative intent was to provide intestate inheritance rights to adopted-out children who remained within the same natural family unit. In amending the law the Legislature attempted to equalize the inheritance rights of children who live together in the same family unit, where one is the child of the mother and father and the other is the child of one of the natural parents and the adopted child of the other parent. It must be noted that in making the revisions in paragraph (e) conform with this concept, the Legislature refers only to the person who is actually adopted-out, and not that person’s issue.
Perhaps even more noteworthy, the Commission recommended revision of Domestic Relations Law § 117 to provide for intestate inheritance by adopted-out children based on the concept that most people who die intestate would want their estates to go to their close natural relatives regardless of whether the natural relative has been adopted by a stepparent or natural grandparent or descendant of a natural grandparent.
"The inequity of the present law lies in the fact that, if a-'natural’ (i.e., related by blood) grandparent, aunt, uncle, brother or sister of the adoptee dies leaving a will bequeathing property to the class to which the adoptee would have belonged but for the adoption, the adoptee inherits if adopted within the natural family; but, if the same natural grandpar *88 ent, aunt, uncle, brother or sister dies intestate, the adoptee would not inherit as a member of such class. Since the primary function of the laws of the descent and distribution is to distribute the estates of intestate decedents as such decedents would have if 7they had executed a will (i.e., to their closest relatives), the present law in New York fails in its purpose. The Commission believes that most decedents dying intestate would prefer that their estates be distributed to their close natural relatives. The Commission further believes that this preference would continue where one of such close natural relatives has been adopted by a stepparent (after the death of a natural parent or otherwise) or by another natural grandparent or descendant of such other grandparent, and thus remains, essentially, within the same family unit.” (Id., at 1927.)
Such is not the case here. The decedent, a member of the natural line of her adopted-out half brother’s family, was a complete stranger to her adopted-out half brother’s daughter, the petitioner. The only indication that the decedent was even aware of the existence of her adopted-out half brother is a letter written by decedent’s father to her mother dated July 29, 1940, in which decedent’s father discussed the existence of his adopted-out son primarily so that decedent could also be made aware of her adopted-out half brother. The record presented to this court is devoid of any evidence of any contacts by petitioner or decedent’s adopted-out half brother within decedent’s family unit. Accordingly, it stretches the imagination to believe that decedent would have chosen to have petitioner be the solé distributee of her entire estate. Additionally, the petitioner is not the adopted-out person herself, but rather the child of such adopted-out person.. Thus, it is the determination of this court that petitioner is not a distributee of the decedent.
This court is not unmindful of SCPA 1001 (6) and the possibility of petitioner qualifying as an eligible person for letters of administration. However, no acknowledged and filed consents have been received from all distributees, nor has there been any showing that the other distributees are themselves all eligible. Moreover, since the petitioner lives in California, does not appear to have any contacts with New York and claims no familiarity with the assets of decedent’s estate, this court in its discretion, finds petitioner not to be eligible for letters of administration under SCPA 1001 (6).
For all of the above reasons, the petition is denied. Inas *89 much as it is asserted that the assets of this estate are substantial and require immediate attention, the court directs that if no person interested herein makes application within 20 days from the date of this decision for letters of administration, the same shall issue to the Public Administrator of Onondaga County upon his qualifying according to law.